# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA P. ESQUER,<br><br>                Plaintiff,<br>  v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                Defendant. | CASE NO. 08cv636 BTM(AJB)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Plaintiff and Defendant have filed cross-motions for summary judgment. For the reasons set forth below, Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED**.

## I. PROCEDURAL BACKGROUND

On October 1, 2003 and December 10, 2003, respectively, Plaintiff filed an application for disability insurance benefits and Supplemental Security Income, alleging a disability onset date of April 30, 2003. Plaintiff's claim was denied initially on August 23, 2004, and upon reconsideration on March 25, 2005.

On July 12, 2006, Plaintiff's claim was heard by Administrative Law Judge Bernard A. Trembly (the "ALJ"). On July 27, 2006, the ALJ issued a decision denying benefits. Plaintiff filed a request for review with the Appeals Council, which was denied. The ALJ's decision then became the final decision of the Commissioner of Social Security. Plaintiff

seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II. ALJ'S FINDINGS AND CONCLUSIONS

The ALJ found that Plaintiff has the following severe impairments: chronic left ankle strain with ligamentous laxity; cervical spine sprain and strain; bilateral patellofemoral chondromalacia and moderate early degenerative arthritis of both knees; and Hepatitis C. The ALJ concluded that Plaintiff's impairment or combination of impairments do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ determined that Plaintiff has the residual functional capacity to do light exertional work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. However, the ALJ restricted Plaintiff to sedentary level work in light of her complaints of instability, giving out of the left ankle, and knee pain.

Applying Medical-Vocational Rule 201.21 based on her age of 46 on the disability onset date, the ALJ determined that Plaintiff was not disabled.[1]

## III. STANDARD

The Commissioner's denial of benefits may be set aside if it is based on legal error

---

[1] Under the Social Security Regulations, the determination of whether a claimant is disabled within the meaning of the Social Security Act is a five step process. The five steps are as follows: (1) Is the claimant presently working in any substantially gainful activity? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step two. (2) Is the claimant's impairment severe? If not, then the claimant is not disabled. If so, then the evaluation proceeds to step three. (3) Does the impairment "meet or equal" one of a list of specific impairments set forth in Appendix 1 to Subpart P of Part 404? If so, then the claimant is disabled. If not, then the evaluation proceeds to step four. (4) Is the claimant able to do any work that she has done in the past? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step five. (5) Is the claimant able to do any other work? If not, then the claimant is disabled. If, on the other hand, the Commissioner can establish that there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). At step five, the ALJ may rely on the decisional grids listed at 20 C.F.R. Part 404, Subpart P, Appendix 2, or alternatively, the ALJ can pose a hypothetical question that describes the claimant's limitations to a vocational expert. Id. at 1101. The ALJ may rely on the grids alone to show the availability of jobs for the claimant only when the grids accurately and completely represent the claimant's abilities and limitations. Id. at 1101-02.

or is not supported by substantial evidence. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance. Id. Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

## IV. DISCUSSION

Plaintiff argues that the ALJ's decision was erroneous because (1) the ALJ mechanically applied the grids without considering whether to apply the grid rules for the Closely Approaching Advanced Age (50-54) category; (2) the ALJ failed to explain conflicting evidence regarding Plaintiff's mental impairment; (3) the ALJ's rejection of Plaintiff's credibility was based on errors of law and was not supported by substantial evidence; and (4) the ALJ disregarded the testimony of Plaintiff's daughter-in-law regarding Plaintiff's daily activities in violation of the regulations.  As discussed below, the Court finds that a remand is appropriate because the ALJ failed to consider whether to use the Closely Approaching Advanced Age Category in applying the grids.  Plaintiff's other arguments do not support a reversal or remand.

### A. Applying the Grids in Borderline Age Situations

The ALJ applied Grid Rule 201.21 based on Plaintiff's age of 46 on the disability onset date.  At the time of the ALJ's denial, Plaintiff was 16 days away from her 50th birthday.

With respect to the application of the grids in borderline age situations, the regulations state:

> We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. *If you are within a few days to a few months* of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563.  (Emphasis added.)

1          Here, the ALJ only used the Younger Individual (18-49) age category in applying the
2   grids. The ALJ did not mention anything about the fact that Plaintiff was only 16 days away
3   from turning 50 and did not discuss whether it would be proper to utilize the Closely
4   Approaching Advanced Age category.
5          Because Plaintiff fell squarely in a borderline situation, it was error for the ALJ not to
6   consider whether to use the older age category. In Russell v. Bowen, 856 F.2d 81, 84 (9th
7   Cir. 1988), a case upon which Defendant relies, the Ninth Circuit held that the claimant was
8   not in a borderline situation because he was 59 years and 5 months old and "was in fact
9   closer to age 59 than to age 60." The Ninth Circuit explained: "Lines must be drawn at some
10  point, otherwise there would be no efficient way to utilize the Grid system." Id.
11         Although there may be cases where it is debatable whether the claimant is in a
12  borderline situation, this case is not one of them. If the claimant is within a month of the next
13  age category, the rules for borderline age situations clearly apply. For example, in Shumaker
14  v. Astrue, __ F.Supp.2d __, 2009 WL 3049263 (D. Mont. Sept. 15, 2009), the court ruled that
15  because the plaintiff was 22 days short of her fiftieth birthday when the ALJ issued his
16  decision, the ALJ erred in not considering whether to use the Closely Approaching Advanced
17  Age category. Similarly, in Nye-Richardson v. Astrue, 2009 WL 1687533 (W.D. Wash. June
18  12, 2009), the court remanded the case because the plaintiff was only one month shy of her
19  fiftieth birthday and the ALJ failed to consider whether to apply the older age category. See
20  also Schiel v. Commissioner of Social Security, 267 Fed. Appx. 660, 2008 WL 467773 (9th
21  Cir. Feb. 15, 2008) (holding that case should be remanded because plaintiff was one month
22  away from being 55, and the record did not reflect consideration of plaintiff's borderline age
23  status).
24         Upon remand, the ALJ must consider Plaintiff in the Closely Approaching Advanced
25  Age category. See Bray v. Commissioner of Social Security Administration, 554 F.3d 1219,
26  1229 n. 9 (9th Cir. 2009) (explaining that upon remand, the issue of which age category
27  plaintiff fell in would be moot because plaintiff was no longer a borderline case). Plaintiff
28  argues that upon utilization of the older age category, a finding of disability is mandated by

Rule 201.14.  However, the ALJ made no findings regarding transferability of skills. Therefore, it is unclear which Rule applies.  Accordingly, the Court remands so that the ALJ can make findings regarding transferability of skills and apply the appropriate Rule in the Closely Approaching Advanced Age category. [2]

**B. Conflicting Evidence Regarding Mental Impairment**

Plaintiff contends that the ALJ failed to explain conflicting evidence with respect to the opinions of Dr. Mounir Soliman and Dr. Kenneth Galen.  Specifically, Plaintiff argues that these doctors' global assessment of functioning (GAF) determinations were inconsistent with their findings regarding Plaintiff's functional limitations (or lack thereof).

Dr. Soliman gave Plaintiff a GAF score of "about 60." (AR 424.)  With respect to Plaintiff's ability to adapt to work or work-like situations, Dr. Soliman concluded: "From a psychiatric standpoint, the patient is able to understand, carry out and remember simple and complex instructions.  The patient is able to interact with co-workers, supervisors, and the general public. The patient would have mild difficulty tolerating the stress related to work and work-like situations." (AR 424.)

Dr. Galen gave Plaintiff a GAF score of 50.  (AR 454.)  Dr. Galen also made specific findings regarding Plaintiff's ability to function in the workplace. (AR 455.)  He found no impairment in her ability to understand, remember or complete simple or complex commands; no impairment in her ability to interact appropriately with supervisors, coworkers, or the public; no impairment in her ability to maintain concentration and attention, persistence, and pace; no impairment in her ability to accept instructions from supervisors; no impairment in her ability to perform work activities without special or additional supervision; mild impairment in her ability to associate with day to day work activity including attendance and safety; and mild impairment in her ability to maintain regular attendance in the work place and perform work activities on a consistent basis. (AR 455.)

---

[2] The Court notes that this decision may not affect the ALJ's denial of disability insurance benefits, because to qualify for disability insurance benefits, Plaintiff must establish disability on or before December 31, 2007. (AR 23.)

A GAF score of 60 indicates that the individual suffers from moderate limitations in social, occupational, or school functioning. A GAF score of 50 is indicative of serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994) ("DSM-IV").

Plaintiff argues that the GAF scores assigned by Dr. Soliman and Dr. Galen are inconsistent with their findings regarding her abilities to function in the workplace. However, a GAF score is a generalized description of the claimant's level of psychological symptoms. DSM-IV at 32. The Commissioner has determined that the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings." 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000). Therefore, the fact that a doctor determined that a claimant has a GAF score of 50 or 60 does not preclude the ALJ from relying on the same doctor's findings that the claimant is not significantly limited in his or her ability to work. See, e.g., Bruner v. Commissioner of Social Security, 2009 WL 3052291 *26 (M.D. Fla. Sept. 23, 2009); Purnell v. Astrue, 2009 WL 2616711 *9 (E.D. Pa. Aug. 26, 2009).

Plaintiff also complains that Dr. Soliman and Dr. Galen did not review her other medical records. However, even assuming the doctors did not review her other medical records, the ALJ may still rely on their findings based on their independent examinations of Plaintiff. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

## C. Rejection of Pain Testimony

Plaintiff contends that the ALJ improperly rejected her pain testimony because the ALJ failed to identify what testimony was not credible. The Court is not persuaded by this argument.

In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis. See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). The first stage of analysis is a threshold test set forth in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test, the claimant must (1) produce objective medical

1 evidence of an impairment or impairments; and (2) show that the impairment or combination
2 of impairments could reasonably be expected to produce some degree of the symptoms
3 described. Id. at 1407-08. "Once the claimant produces objective medical evidence of an
4 underlying impairment, an adjudicator may not reject a claimant's subjective complaints
5 based solely on a lack of objective medical evidence to fully corroborate the alleged severity
6 of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).  If the claimant satisfies the
7 Cotton test and there is no evidence of malingering, the ALJ can reject the claimant's
8 testimony about the severity of her symptoms only by offering specific, clear and convincing
9 reasons for doing so.  Smolen, 80 F.3d at 1281.  The ALJ must state specifically which
10 symptom testimony is not credible and what facts in the record support that conclusion.
11 Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

12        The ALJ in this case found that "[Plaintiff's] statements concerning the intensity,
13 persistence and limiting effects of [her] symptoms are not entirely credible."  (AR 27.)
14 Apparently, Plaintiff contends that the ALJ was required to point to each specific statement
15 that was rejected in whole or in part.  However, there does not appear to be a legal
16 requirement for this level of specificity.  See, e.g., Gomez v. Astrue, 2009 WL 2390852 (C.D.
17 Cal. July 31, 2009) (holding that clear and convincing reasons supported the ALJ's
18 determination that "plaintiff's statements concerning the intensity, persistence, and limiting
19 effects of his subjective symptoms 'were not entirely credible.'"); Bryant v. Astrue, 2009 WL
20 2355625 (C.D. Cal. July 29, 2009) (rejecting argument that ALJ did not specifically identify
21 which testimony he found not credible).  The Court finds that the ALJ sufficiently identified
22 which testimony he found not credible.

23        Although Plaintiff argues, and the Court agrees, that the ALJ erroneously failed to
24 consider Plaintiff's daughter-in-law's questionnaire answers regarding Plaintiff's daily
25 ///
26 ///
27 ///
28

activities,[3] Plaintiff does not challenge the other grounds given by the ALJ for rejecting Plaintiff's pain testimony. These grounds include: Plaintiff's mental status exams were unremarkable and Plaintiff has been cognitively intact; progress notes from Plaintiff's psychiatrist show that the prescribed medications stabilized Plaintiff's mood and that no side effects were reported; Plaintiff's subjective complaints are disproportionate to the objective findings of record; there is no evidence of loss of weight due to loss of appetite due to pain or depression; there is no evidence of sleep deprivation due to pain or depression; there is no evidence of disuse or muscle atrophy; Plaintiff does not regularly use any assistive devices; Plaintiff's gait was normal; Plaintiff's treating course has been conservative - surgical intervention for her ankle and knees was not warranted; there is no evidence of chronic liver disease associated with Plaintiff's Hepatitis C; and the evidence does not establish that Plaintiff's medications have caused disabling side effects. The Court finds that these reasons are clear and convincing reasons for finding Plaintiff's subjective symptom testimony not credible.

///
///
///
///
///

---

[3] The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). In order for a claimant's daily activities to be used to discredit her subjective pain and symptom testimony, the cited activities must occupy a substantial part of the claimant's day and utilize skills transferable to the workplace. Vertigan, 260 F.3d at 1049. In a Daily Activities Questionnaire, Plaintiff's daughter-in-law indicated that Plaintiff did very little around the house, such as making herself a quick sandwich, doing a few dishes or doing a little bit of laundry. (AR 127-31.) The daughter-in-law stated that Plaintiff never finishes tasks or chores because she can't stand long enough or because Plaintiff experiences pain bending or attempting to carry things. (AR 131.) This evidence was pertinent to the issue of whether Plaintiff's daily activities occupied a substantial portion of Plaintiff's day. The ALJ actually made no findings as to how much time Plaintiff's daily activities occupy, or as to the transferability of the skills to the workplace. Therefore, Plaintiff's daily activities do not constitute a valid ground for rejecting Plaintiff's pain testimony.

## V. <u>CONCLUSION</u>

For the reasons discussed above, Plaintiff's motion for summary judgment is **GRANTED** and Defendant's motion for summary judgment is **DENIED**. The Court **REMANDS** this case to the Commissioner of Social Security for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  December 30, 2009

*Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge